IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RIO VALLEY MOTORS COMPANY,

        Plaintiff/Debtor

vs.                                            CIVIL NO.  07-14 MV/LFG

FORD MOTOR CREDIT COMPANY
and VALLEY NATIONAL BANK,

        Defendants.

### RECOMMENDED DISPOSITION[1]
### THAT DEBTOR'S MOTION TO WITHDRAW
### ORDER OF REFERENCE BE DENIED

### Introduction

THIS MATTER[2] is before the Court on Plaintiff/Debtor Rio Valley Motors Company's ("Rio Valley") Motion to Withdraw the Reference to the United States District Court for the District of New Mexico ("Motion to Withdraw") [Doc. 4], filed January 26, 2007.[3]  The Motion to Withdraw

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

[2]It is not entirely clear whether the Court has captioned this matter correctly, or whether this Motion to Withdraw should have been docketed as a new civil proceeding, separate from the appeal that was already pending under No. CIV 07-14 MV/LFG.  Several weeks before this Motion to Withdraw was filed or docketed in No. CIV 07-14, the debtor had filed an appeal from several Orders issued by the Bankruptcy Judge in the same underlying bankruptcy proceeding.  The debtor elected to have the appeal heard by the United States District Court.  That appeal has not been briefed yet, but is captioned Rio Valley Motors Company v. Ford Motor Credit Company et al.  The appeal was referred to the United States Magistrate Judge to issue a report and recommendation.  This Motion to Withdraw seeks to have the entire bankruptcy proceeding resolved by the United States District Court.  Thus, even if the motion to withdraw is denied, the appeal will continue under No. CIV 07-14.  Should the motion to withdraw be granted, it is not clear what the proper caption of the case is, since the entire bankruptcy proceeding would be before the United States District Court.

[3]While the pleading states that it seeks to withdraw the reference to the U.S. District Court, the motion actually requests withdrawal of the reference to the U.S. Bankruptcy Court.

seeks to remove the entire underlying bankruptcy proceeding[4] from the United States Bankruptcy Court.

On January 19, 2007, Valley National Bank, a secured creditor, filed objections to the Motion to Withdraw.  [Doc. 5.]  On January 22, 2007, Ford Motor Credit Company ("Ford Credit"), a secured creditor, also filed a brief in opposition to the Motion to Withdraw.  [Doc. 6.][5]  In reaching its recommended disposition, the Court carefully considered the Motion to Withdraw, along with both sets of objections, and the pertinent law.

## Background of Bankruptcy Proceeding

Rio Valley (or "Debtor/Dealer") is an automobile dealership located in the District of New Mexico.  Prior to filing the bankruptcy proceeding, Ford Credit had provided secured financing to Rio Valley and had claimed a security interest in all assets as part of that agreement.  [Doc. 4, ¶ 1, 7 ,8].  Rio Valley alleges that prior to October 13, 2006, as part of the floor financing plan, Ford Credit issued a notice imposing curtailment fee costs on Rio Valley's  new car inventory.  These costs, Rio Valley argues, had never before been sought, and with the exception of Ford and Mercury dealers in the Denver region, were not imposed anywhere else in the country.  [Id., ¶ 10, 11.]  Rio Valley contends that the effect of imposition of the curtailment fees significantly increased the debtor/dealer's expenses, and the imposition of the increased expenses, combined with a downturn in the public's interest in buying new vehicles, caused Rio Valley to determine that its liabilities

---

[4]Ford Motor Credit Company's opposition to the Motion to Withdraw states that Rio Valley has not specified whether it seeks the withdrawal of the entire bankruptcy proceeding.  [Doc. 6, p. 5.]  However, the second paragraph of Rio Valley's Motion to Withdraw states otherwise, i.e., that the request is for an immediate and mandatory withdrawal of the entire case.  In addition, Rio Valley asserted that the U.S. Constitution demanded that the reference to the entire case be withdrawn.  [Doc. 4, p. 1, ¶ 54.]

[5]In January 2007, both these responses were filed in the bankruptcy proceeding (Case No. 06-11866 s11, a Chapter 11 Proceeding for Reorganization) and entered on the Bankruptcy Court's docket.  However, this Court did not receive copies of the objections until mid-February 2007, at which time they were entered in No. CIV 07-14 MV/LFG.

exceeded its assets. [Id., ¶ 14.] Rio Valley's initial determination was subsequently revised to show an excess of assets over liabilities. [Id., ¶ 15.]

On October 13, 2006, Rio Valley filed this Chapter 11 bankruptcy case in the United States Bankruptcy Court in the District of New Mexico. In late October, Rio Valley filed an emergency motion to use cash collateral to pay pre-petition debts, including payroll. [Doc. 4, Ex. 2.] On October 24, 2006, the Court denied Rio Valley's emergency motion, and continued the cash collateral hearing to November 3, 2006.[6] [Doc. 4, ¶¶ 16-17; Doc. 6, ¶ 6.]

According to Ford Credit, the Bankruptcy Court held the evidentiary hearing on November 3rd and conducted supplemental telephonic hearings on November 6 and November 7, 2006. [Doc. 6, ¶ 7.] Rio Valley explains that its request to use cash collateral was opposed by Ford Credit, the primary creditor, and Valley National Bank, a second lien claimant. Rio Valley offered a "proforma," which purported to show that it could successfully continue automotive sale operations from the fall of 2006 through the spring of 2007 [Doc. 4, ¶ 21]. However, Rio Valley needed access to the cash collateral for successful operations of its business. Further, Rio Valley wanted access to various trust accounts, which included gross revenues of automobile sales, and unsuccessfully argued that if it ran a normal business for a period of time, it would be able to sell its dealership. Rio Valley stated it had contracted with a brokerage firm for the sale of its dealer franchise. [Id., ¶ 27.]

According to Ford Credit, after the Bankruptcy Court received evidence on the matter in dispute, the Court issued extensive findings and permitted Rio Valley to use cash collateral on an interim, limited basis for the month of November 2006, conditioned upon Rio Valley making certain adequate protection payments to Ford Credit and Valley National Bank. [Doc. 6, ¶ 7.] The

---

[6]The parties provide slightly different dates for this hearing that took place in early November 2007.

Bankruptcy Court scheduled a continued hearing on November 30, 2006, to determine whether to permit further use of cash collateral.  [Id.]

On November 30, 2006, the Bankruptcy Court conducted another evidentiary hearing. According to Ford Credit, the Court again made extensive findings in a carefully crafted 23-page opinion, denying  further use of cash collateral.  [Id., ¶ 8.]

Rio Valley indicated at the preliminary hearing that it intended to file a motion for reconsideration of the Bankruptcy Court's Order.  The Motion was filed on December 13, 2006, and denied by the Bankruptcy Court on December 21, 2006.  [Id., ¶¶ 9, 10, 11.]  Ford Credit asserts that after the Bankruptcy Court denied the motion to reconsider, Rio Valley then filed the instant Motion to Withdraw Reference.   In addition, on January 3, 2007, Rio Valley filed an appeal of the Bankruptcy Court's Orders denying the use of cash collateral, which is pending before this Court and docketed in the same cause number, 07-14 MV/LFG.

Rio Valley argues while it "warned the Article I Court that any impediments in or to operating a normal dealership during this Chapter 11 would decrease the franchise sale value," [Doc. 4, ¶ 29], the Court nonetheless declined to allow Rio Valley debtor utilization of the cash on hand, and, instead, ordered that it be turned over to Ford Credit, and, further, limited use of the collateral in Rio Valley's possession.  [Id., ¶ 30.]

Rio Valley complains that "no explanation was ever given by this Article I court as to why these debtor funds had to be handed over . . . ."  [Id., ¶ 31.]  Rio Valley further argues that "[t]he court refused to consider approval of any post-petition expenses . . . ." [¶ 33], and "the Court abruptly, without any warning, denied further payroll for employees or any further Use of Collateral for any business expenses." [¶ 34].  Rio Valley claims that the Bankruptcy Court's actions were "arbitrary" [¶ 35], and resulted in "sudden action" with a "disastrous effect" [¶ 36], all of which

4

occurred just before Christmas [¶ 37].  Such actions demonstrated, according to Rio Valley, the Bankruptcy Court's misunderstandings and misapprehension of the law and facts. [¶ 38.]  Claiming that the Chapter 11 proceeding before the Bankruptcy Court was a "tortured process," Rio Valley argues that it is now in "immediate jeopardy of damage" and "immediate irreparable harm."  [¶ 43.]

On January 8, 2007, the Bankruptcy Court conducted an evidentiary hearing on Ford Credit's motion for relief from the automatic stay.  Ford Credit explains that the Bankruptcy Court has taken that matter under submission.  [Doc. 6, ¶ 14.]  The bankruptcy proceeding in Bankruptcy Court has been pending for about four months, is being actively litigated and is an ongoing proceeding.  No final resolution has been reached.

## **Motion to Withdraw**

By this present motion, Rio Valley seeks to withdraw the entire case from the Bankruptcy Court with the hope, perhaps, of finding a more favorable forum.  It contends that withdrawal of the case from Bankruptcy Court is mandatory under 28 U.S.C. § 157(d).  Ford Credit argues that the motion to withdraw should be denied, as does Valley National Bank.  [Doc. Nos. 5, 6.]  More specifically, Ford Credit asserts there is no basis under the pertinent law or facts of this case for either mandatory or discretionary withdrawal of the order of reference.  Valley National Bank contends that Rio Valley's Motion to Withdraw is an "improper attempt to circumvent the appellate process and to get a second bit at the apple by having [the United States District Court] re-hear and overrule the Bankruptcy Court's denial of the use of cash collateral." [Doc. 5, p. 2.] Valley National Bank further argues, *inter alia,* that the Motion to Withdraw is not mandatory and that the Motion is untimely.

**Pertinent Legal Standard**

Title 28 U.S.C. § 1334(b) provides the United States District Court with original, but not exclusive, jurisdiction over all bankruptcy proceedings.  The Bankruptcy Court exercises such jurisdiction under a standing order of reference, permitted by 28 U.S.C. § 157(a).  United States District Court, District of New Mexico Administrative Order Misc. No. 84-1324.  Once a Title 11 proceeding is referred to the Bankruptcy Court, the District Court may withdraw the reference as allowed by 28 U.S.C. § 157.

Rio Valley invokes 28 U.S.C. § 157(d) in support of its argument that withdrawal of the reference to the Bankruptcy Court is mandatory.  That section provides:

> The District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The District Court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In re White Motor Corp., 42 B.R. 693, 699 (N.D. Ohio 1984) (*citing* 28 U.S.C. § 157(d)).  Rio Valley asserts that the District Court must withdraw this proceeding from the Bankruptcy Court because its resolution requires consideration of Title 11 and "other federal laws", specifically, the Federal Dealer Day in Court Act, 15 U.S.C. §§ 1221-1225.

"The Dealer Day in Court Act" is intended to protect dealers by giving them a cause of action over and above common law remedies.  It attempts to equalize power by protecting dealers who are generally economically feeble compared to manufacturers, and by granting dealers broad judicial protection from manufacturers' "arbitrary treatment."  Hoffman Motors Corp. v. Alfa Romeo, 244 F. Supp. 70, 77 (S.D.N.Y. 1965).  Further, the statute's purpose is to protect against arbitrary action

and to ensure that manufacturers act in good faith in performing or complying with provisions of its franchise agreement.  Alfieri v. Willys Motors, Inc., 227 F. Supp. 627, 629-630 (E.D. Pa. 1964).

Rio Valley contends that it can bring suit under the Federal Dealer Day in Court Act against an automobile  manufacturer on allegations that the automobile manufacturer failed to act in good faith in performing or complying with any terms or provisions of the franchise, or in terminating, canceling or not renewing a franchise.  See Grappone, Inc. v. Subaru of America, Inc., 403 F. Supp. 123, 126-27, 134-35 (D.N.H 1975).  The debtor further notes, as of January 1, 2007, (when it filed the Motion to Withdraw in Bankruptcy Court), that it would shortly be filing such a complaint in "this Court."  [Doc. 4, ¶ 53.]  Rio Valley also asserted that it would file a proceeding in the Bankruptcy Court by January 10, 2007, seeking damages in excess of $100,000 against Ford Credit and a jury trial. [Id., ¶ 57.]  Valley National Bank observes that Rio Valley informed the Bankruptcy Court that it would be filing a lawsuit under the Dealer Day of Court Act against Ford Credit by January 10, 2007.  [Doc. 5, p. 3.]  But, Valley National Bank states no such action had been filed as of the date it filed its objections on January 19, 2007.  As of this date, this Court is not aware that Rio Valley filed such a proceeding.  Thus, there is no current adversary proceeding or any other proceeding involving this Act.

## Discussion

The language of 28 U.S.C. § 157(d) (see supra) provides for both permissive and mandatory withdrawal of a case referred to the bankruptcy court.  In re Americana Expressways, Inc., 161 B.R. 707, 709 (D. Utah 1993).  Regarding "permissive" withdrawal, the court determines whether "cause" exists.  Id.  Withdrawal of the reference is mandatory, however, when resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.  Id.

Here, Rio Valley argues only that withdrawal of the reference is mandatory.  [Doc. 4, ¶¶ 56, 57, 58, 59, 60, and p. 12.]  Rio Valley does not expressly assert that "cause" exists to justify "permissive" withdrawal.  However, both Ford Credit and Valley National Bank argue that neither type of withdrawal should be permitted under the circumstances of this case.

### A.     Mandatory Withdrawal Under 28 U.S.C. § 157(d)

While the language of § 157(d) is sometimes viewed as "broad" and difficult to reconcile with other portions of § 157 that provide for referrals to the Bankruptcy Court, the legislative history indicates that the withdrawal provision is to be construed narrowly.  Id. at 714.  In other words, the mandatory provision of §157(d) was not meant to become "an escape hatch through which most bankruptcy matters will be moved to a district court."  Id. at 714-15 (citing 1 Collier on Bankruptcy ¶ 3.01, at 3-66 to 3-70 (Lawrence P. King, ed. 1993)) (internal quotation omitted).

> In light of this legislative history, courts have read "consideration" to mean "something more than the mere process of examining, thinking about, or taking into account." . . . Under such a reading, withdrawal is mandatory "'only if [the] court can make an affirmative determination that resolution of the claims will require substantial and material consideration of . . . non-Code statutes.'" . . . "The consideration of the non-Code law must entail more than its routine applications to the facts."

Id. at 714-15 (internal citations omitted).

Similarly, the Court in In Re White Motor Corp., 42 B.R. at 699, determined that the mandatory withdrawal provision should be construed narrowly.  The Court finds persuasive Judge Ann Aldrich's analysis of § 157(d)'s withdrawal provisions:

> Scattered in the legislative history, . . ., are comments providing a slightly clearer indication of the appropriate reading to be given to Section 157(d).  Discussing proposed language similar to that enacted as Section 157(d), the Senate report stated,

"Unlike the 1978 Act, however, S.1013 gives the district court far greater control over the handling of all bankruptcy cases and proceedings. Under [the proposal] the district court judge may recall, on its own motion, any case or proceeding referred to the bankruptcy court. Also, a motion for recall of any case or proceeding may be made either by a bankruptcy judge or a party. Recall by the district court is generally discretionary, except that recall is mandatory in two instances: (1) in any proceeding involving a claim or cause of action which is not one arising under Title 11; and (2) in any proceeding where the district court determines that Federal laws regulating organization or activities affecting interstate commerce are involved--the Committee intends that this second instance of mandatory recall be construed narrowly--basically to cover only those organizations or activities which immediately and directly affect interstate commerce."

Moreover, this "narrow construction" of the statute is highlighted by Senator DeConcini's remarks found in 130 Cong. Rec. H1849-50 (daily ed. March 21, 1984), where he similarly urged a narrow reading of § 157(d).

This provision concerns mandatory withdrawal of proceedings from the bankruptcy judge where the district court determines that resolution of the proceedings requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. *The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organization or activities regulating interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. The district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.*

In re White Motor, 42 B.R. at 700 (emphasis in original) (*citing* 130 Cong. Rec. § 6081 (daily ed. June 19, 1984)). *See also* In re Airadigm Communications, Inc., 2006 WL 3017422 at * (W.D. Wisc.

Sept. 18, 2006) ("[c]ourts have overwhelmingly agreed that [mandatory withdrawal] provision cannot be given its broadest literal reading because sending every proceeding that requires consideration of non-bankruptcy law back to the district court would 'eviscerate much of the work of the bankruptcy courts.'"); In re Westmoreland Coal Co., 221 B.R. 512, 513-14 (D. Colo. 1998) ("well settled that the mandatory withdrawal of reference provision . . . is to be narrowly construed"); In re Sahni, 227 B.R. 748, 750 (D. Kan. 1998) (courts in the District of Kansas narrowly construe the mandatory withdrawal provision; substantial and material consideration entails more than routine application of federal non-bankruptcy law to the facts; the non-code issues must dominate the bankruptcy issues); In re Johns-Manville Corp., 63 B.R. 600, 603 (S.D.N.Y. 1986) ("mandatory withdrawal provision is to be construed narrowly so that it does not become an "escape hatch" for matters properly before the bankruptcy court").

Rio Valley failed to satisfy its burden of demonstrating that the proceeding qualifies for mandatory withdrawal or that the analysis of non-code provisions "requires anything more than applying existing law . . . to a new factual situation." *See* In re Airadigm Communications, Inc., 2006 WL 3017422 at *2 (internal citation omitted) (movant failed to meet burden). *See also* In re Americana Expressways, 161 B.R. at 715 (it is movant's burden to demonstrate justification for mandatory withdrawal). While Rio Valley may have a cause of action under the federal Dealer Day in Court Act, there is insufficient basis for the Court to "make an affirmative determination that resolution of the [*e.g.,* Dealer Day in Court] claims will require substantial and material considerations of those non-Code statutes." In re Westmoreland, 221 B.R. at 514 (internal citation omitted). There simply has not been a sufficient showing that the determination at issue "requires 'significant interpretation of federal law that Congress would have intended to have decided by a district judge rather than a bankruptcy judge' or where issues arising under non-Title 11 laws dominated those

arising under Title 11." Id. at 515 (internal citation omitted).  Nor has Rio Valley demonstrated that the non-bankruptcy code issues will dominate the code issues.  It is more likely that the bankruptcy court's consideration of the Dealer Day in Court Act will be tangential to the main issues in the bankruptcy proceeding.

Here, there is no question that the Title 11 bankruptcy proceeding is a core proceeding over which the Bankruptcy Court has final decisionmaking authority, and that it is properly before the Bankruptcy Court through the Administrative Order referring such matters to the bankruptcy court. This Court concludes that the issues to be considered and resolved in this case primarily arise from the bankruptcy code.  Thus, the Court declines to find that the order of reference must be withdrawn under the mandatory provision of § 157(d).

**B.      Permissive Withdrawal Under 28 U.S.C. § 157(d)**

While Rio Valley did not explicitly argue that the reference should be withdrawn under the "permissive" provision of § 157(d), the Court declines to find that there is cause shown to warrant permissive withdrawal.  A district court may withdraw a case for cause shown under § 157(d). "Factors a court considers when determining whether cause exists are: (1) judicial economy, (2) convenience, (3) a particular court's knowledge of the facts, (4) promotion of uniformity and efficiency of bankruptcy administration, (5) reduction of forum shopping and confusion, (6) conservation of debtor and creditor resources; and (7) whether parties requested a jury trial.  In re Airadigm, 2006 WL 3017422 at *2 (internal citation omitted).

A review of these factors, as applied to the facts and procedure of this bankruptcy proceeding, does not support a finding of "cause" sufficient for permissive withdrawal.  The bankruptcy proceeding is well underway, and the Bankruptcy Court has already devoted significant judicial resources and invested both time and talent in resolving the bankruptcy matter.  Four months have

11

passed since the case's inception.  During that time, the Bankruptcy Court has held full-day, lengthy evidentiary hearings and issued several sets of thorough, comprehensive and detailed findings, along with a decision denying the motion to reconsider.  The Bankruptcy Court has special expertise in this area and clearly is familiar with the issues and parties.  Moreover, that Court has the ability, expertise, and knowledge necessary to handle the core bankruptcy proceeding.

The parties have already been operating under the authority and procedures of the bankruptcy court.  To remove the case at this point would undermine uniformity and efficiency of the bankruptcy court administration.  It would also be a waste of judicial resources and those of the parties to re-litigate a matter that Rio Valley already has appealed to the District Court.  [*See* Doc. 1.]  Moreover, there would be significant delay if this Court had to be brought up to speed on issues already resolved by the court with more expertise and knowledge to handle those matters.

Bankruptcy judges are highly skilled in protecting the rights of debtors and creditors, and have developed policies and procedures intended to quickly consider and dispose of matters of this nature.  The withdrawal of the order of reference would, without doubt, slow the entire process.  Delay would work to the detriment of both the debtor and the creditor and would not be in keeping with this Court's responsibilities under the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.,* in that the withdrawal would promote delay and increase costs of the proceedings.

In addition, the Court questions whether the Motion to Withdraw is timely, or whether it is, indeed, merely an attempt to forum shop for potentially more favorable rulings after having received unfavorable rulings.  A Motion to Withdraw should be filed as soon as possible after the grounds for withdrawal become clear.  In re Allegheny Health Education and Research Foundation, 2006 WL 3843572 at * 2 (W.D. Pa. Dec. 19, 2006).  Courts have judged the timeliness of motions to withdraw

12

by examining when the movant first became aware of the facts or circumstances making withdrawal possible under § 157.  Id. (listing cases).

As noted in Valley National Bank's objections, Ford Credit opposed Rio Valley's use of cash collateral since before October 24, 2006.  [Doc. 5, p. 4.]  It appears that the majority of Rio Valley's dissatisfaction derives from Ford Credit's opposition to the use of cash collateral and related rulings by the Bankruptcy Court about the use of cash collateral.  Ford Credit's position, along with the Bankruptcy Court's rulings, were known well before January 1, 2007, when the motion to withdraw was filed in bankruptcy court.

In In re Allegheny Health Education, the District Court noted that the movant's arguments in support of withdrawal all had one thing in common – they "could have been made the day that the adversary proceeding complaint [in bankruptcy court] was filed."  2006 WL 3843572 at *2.  Nothing changed over the next ten months except for the movant's "apparent growing dissatisfaction and frustration with the bankruptcy court's handling of the matter."  Id.

The same appears true here.  Rio Valley knew Ford Credit's position about the use of cash collateral early on, along with its allegations that Ford Credit used coercive and intimidating tactics in violation of the Dealer Day in Court Act.  If Rio Valley believed withdrawal was mandatory because of those positions and allegations, the motion should have been filed earlier.  Otherwise, at this stage of the litigation, it appears more likely that Rio Valley's "growing dissatisfaction and frustration with the bankruptcy court's handling of the matter" prompted the Motion to Withdraw.  See, e.g., Doc. 4, ¶ 45 (Rio Valley argues that "[t]he Article I Court below has admitted numerous times that it does not understand the Automotive business and its decisions hereunder certainly clearly support the Court's own beliefs.").

13

Finally, the Court must be cognizant of the respective workloads of the United States Bankruptcy Courts and District Courts.  *See* In re White Motor, 42 B.R. at 700 (*citing* 130 Cong. Rec. S6081).  This factor is crucial in determining whether the case can be resolved faster in one court as opposed to the other.  Bankruptcy filing rates have substantially declined nationwide, and especially so in the District of New Mexico.  The declining statistics in the United States Bankruptcy Court must be compared with the exact opposite situation in the United States District Court for the District of New Mexico.

Of the 94 judicial districts that comprise the federal system, five find themselves at the top: the District of Southern California, the District of Arizona, the District of New Mexico, and two districts in Texas--Texas Southern and Texas Western.  These five judicial districts, located in the four border states that comprise the districts' southern border with the Republic of Mexico, have the highest felony filings per judgeship of the 94 judicial districts.  Of these five, the District of New Mexico is number one.  In other words, there are more felony filings per judgeship in New Mexico than in any other judicial district in the entire federal system.  *See* U.S. District Court– Judicial Caseload Profile, ending 12/30/06, http://jnet.ao.dcn/cgi-bin/csmd2006.pl (detailing statistics for U.S. District Court in the District of New Mexico).

Taking a case away from the Bankruptcy Court and adding it to the U.S. District Court's docket only increases the case burden of the District Court.  Thus, in considering the respective benefits and burdens on the two courts, and with the knowledge that a withdrawal of this order of reference would result in delay in the ultimate disposition of the case, the requested withdrawal is not prudent.  Finally, the Court is cognizant that any party aggrieved by a decision of the Bankruptcy Court, following final judgment, may appeal to the District Court.  Notwithstanding Rio Valley's

claim of irreparable harm, harm is not irreparable if it is subject to being repaired by an award of damages.

### **Recommended Disposition**

In sum, affording § 157(d) the narrow view as proposed by Senator DeConcini, and in balancing the benefits of a Bankruptcy Court hearing the core and non-core proceedings against a total withdrawal of the order of reference, the Court recommends that the order of reference not be withdrawn and accordingly, that the Motion to Withdraw [Doc. 4] be denied.

Lorenzo F. Garcia
Chief United States Magistrate Judge